## In re BURLINGTON MALTING CO.

### (District Court, E. D. Wisconsin. August 6, 1901.)

**1.** BANKRUPTCY—ATTACHING CREDITORS—RIGHT TO PETITION—PROVABLE CLAIM.
Under Bankr. Act, § 67c, classing an attachment sought and permitted in fraud of the provisions of the act as a preference, and section 57g, providing that a preferred creditor cannot prove his claim unless the preference is surrendered, the petition of a creditor, who has an attachment on the property of his debtor, that such debtor be adjudged a bankrupt, cannot be entertained, since such creditor has no provable claim, as required by section 59b.

**2.** SAME—ASSIGNMENT OF CLAIM.
Persons who have sold and assigned their claims against a debtor have no standing to petition that such debtor be adjudged a bankrupt.

In Bankruptcy.

On petition for adjudication of involuntary bankruptcy. The original petition for involuntary bankruptcy is by Adolph Keitel as a single alleged creditor, stating that all the creditors are less than 12 in number. After preliminary hearing in reference to the bona fides and provability of the petitioner's claim, the further hearing was postponed to enable other creditors to intervene, as the answer disclosed a number of creditors in excess of 12.

Friend & Trottman and Chas. B. Stafford, for petitioning creditor.

Winkler, Flanders, Smith, Bottum & Vilas and Henry Madigan, for Burlington Malting Co.

SEAMAN, District Judge. The objections to these petitions in involuntary bankruptcy raise the twofold question: (1) Whether the original petitioner, as an attaching creditor, was competent to institute the proceeding in bankruptcy, while retaining his attachment levy; and, if competent, (2) whether the intervening petitioners are existing "creditors who have provable claims," to make up the requisite number of petitioners for an adjudication. In either aspect the question affects the jurisdiction, and should be considered at this stage, although not presented with the formality of a plea in equity.

1. The primary petition does not state the fact of the pending attachment suit upon the same claim, but the answer so alleges, and the fact is conceded on behalf of the petitioner; the only dispute being as to the sufficiency of the levy to cover the claim on which no proof has been taken. The inquiry presented is this: The attachment existing, has the attaching creditor prima facie standing under the bankrupt act to follow up his attachment with a petition for an adjudication of bankruptcy against his debtor, based upon the same claim, and without formal release of his levy? Its solution is not free from difficulty under the various terms of the act, with no single provision directly covering it. Section 59b requires that petitioners shall be "creditors who have provable claims" aggregating $500 in amount, but with the qualification that this amount be "in excess of the value of securities held by them"; thus clearly implying that the fact of security is not a bar. The

act clearly recognizes certain classes of security as valid, and unaffected by an adjudication of bankruptcy; while it is equally plain that an attachment lien acquired under the circumstances disclosed here is not thus recognized, but is denounced as a fraud upon the act, and invalid, so that the proviso in reference to "securities" is applicable to the first-mentioned class, and cannot serve to extend the meaning of the clause to the unlawful class without other aid to that end. If, however, the claim as presented by the petition is provable in the sense of the act, with the attachment in force, it must be conceded that the petitioner is included in the general language of this clause, unless excluded by some other provision. Whether the claim is so provable must be ascertained from section 57, as to "proof and allowance of claims," and related provisions. As section 57e authorizes preliminary allowance of "claims of secured creditors and those who have priority" at "such sums only as to the courts seem to be owing" in excess of the value of the security or priority, and section 57g excludes from allowance "the claims of creditors who have received a preference" unless such preference is surrendered, the first inquiry is whether this attaching creditor falls under one or the other of these classifications. In the general sense of such terms, an attachment may be both security and a preference, so that either would be applicable to an attachment treated as valid, but designation as security would seem inapplicable to a lien which the same enactment declares void; and, surely, the provision to ascertain and deduct the value of the security is not applicable to a lien thus denounced. On the other hand, the term preference is at least descriptive of the import of the levy, and section 57g may well be held applicable, unless section 60 excludes such interpretation. That section specifies only acts of the debtor,—(1) the procuring or suffering of a judgment against himself; or (2) the transfer of any of his property, the effect of which will be to enable any creditor to obtain a greater percentage of his debt than others of like class,—and states that they shall be deemed the giving of a preference, while attachments or other liens obtained by creditors are not mentioned; and, if this were the only provision, or these were the only transactions so designated in the act, it would be strongly persuasive, if not controlling, as a definition of the term in section 57g. But the same term is used elsewhere in reference to liens given and acquired through legal proceedings. Thus section 3, naming the acts of bankruptcy for which an adjudication will be granted, specifies that of suffering or permitting, "while insolvent, any creditor to obtain a preference through legal proceedings"; and section 67c, under the title "Liens," specifies a lien obtained through such proceedings, "including an attachment upon mesne process,"—within the time and under the circumstances disclosed in this instance,—as avoided by the act when "its existence and enforcement will work a preference." I am of opinion, therefore, that the attachment must be treated as a "preference," within the meaning of the several provisions,—as a lien "sought and permitted in fraud of the provisions of this act," in the language of section 67c,—and that the claim is not provable unless

the preference is surrendered as required by section 57g. The recent decision by the supreme court in Carson v. Trust Co., 21 Sup. Ct. 906, 45 L. Ed. ——, 5 Am. Bankr. R. 814, is instructive for the strict construction adopted against preferential creditors under the present act; and, while decisions under the act of 1867 are not strictly applicable upon this point, they are also instructive as upholding the general proposition that the attaching creditor cannot institute bankruptcy proceedings upon his claim while retaining his levy, the dual positions being antagonistic under the fundamental doctrine of the bankrupt law that equality is equity. See In re Hazens, 4 Dill. 549, Fed. Cas. No. 6,285; In re Scrafford, 4 Dill. 376, Fed. Cas. No. 12,556; In re Jewett, 7 Biss. 242, Fed. Cas. No. 7,305; In re Rado, 6 Ben. 230, Fed. Cas. No. 11,522. Also under the present act, in reference to preferred creditors as petitioners, In re Rogers Mill. Co. (D. C.) 102 Fed. 687, 4 Am. Bankr. R. 540; In re Gillette (D. C.) 104 Fed. 769, 5 Am. Bankr. R. 119. In this view the petitioner is without standing, therefore, unless the filing of the petition can be considered the equivalent of a surrender or release of the lien. The case is not presented of a repentant preferential creditor, confessing an attachment in violation of the act, and averring either a discontinuance or an offer to release the levy, but the petitioner withholds all such facts, and states his claim as one aggregating more than $500 "in excess of the value of securities held by him," thus tacitly asserting the validity of any security held; and no offer is made, by amendment or otherwise, to release or surrender the attachment as finally disclosed, except that counsel suggested at the hearing a willingness to release in the event of an adjudication of bankruptcy. Instead of the single proceeding on the part and for the benefit of the general creditors intended by this act to save the assets of an insolvent debtor from spoliation by preferences and secure equality in their distribution, this petitioner appears, with a claim disputed and fairly disputable, seeking, on the one hand, to obtain a preference by enforcing it through an attachment against the property, and on the other invoking the inconsistent remedies of bankruptcy. Leaving out of consideration the serious question of bona fides on the part of the petitioner, I am satisfied that no unconditional release of the attachment can be inferred from the petition, and that proceedings in bankruptcy, being governed by the rules of equity, cannot be instituted by a claimant in the attitude and status of this petitioner.

2. The original petition alleges as ground for its presentation by a single petitioner that the creditors of the alleged bankrupt were less than 12 in number, and, upon the answer disclosing a much larger number of general creditors, the further hearing was delayed, and notice thereof given to all such creditors, to enable others to appear in conformity to the statute. Thereupon two intervening petitions were filed; one by F. P. Smith, for $8.45, and the other by E. A. Sittig & Son, for $56.25. Issue being taken upon the truth and bona fides of such claims, it now appears by the undisputed proof that the claims so brought in were purchased by the original petitioner, and paid by him or his counsel in full, and that the pur-

ported·interveners have no actual claim or interest. ' The procedure is an obvious subterfuge, and the intervening petitions are summarily. dismissed. In any view, the claims so appearing are provable only by the original petitioner as purchaser and actual owner (In re Worcester Co., 42 C. C. A. 637, 102 Fed. 808, 4 Am. Bankr. R. 496, 505), and furnish no aid for the purpose of jurisdiction. The original petition is dismissed for want of jurisdiction in either view.