In re HORNSTEIN.

(District Court, N. D. New York. April 3, 1903.)

1. BANKRUPTCY—POWERS OF COURT—ENJOINING SUIT IN STATE COURT.
    The bankruptcy law gives to courts of bankruptcy full power to enjoin all persons within their jurisdiction from doing any act that will interfere with or prevent its due administration, whether such persons are parties to the proceedings or not; and, where they are litigants in a state court, no rule of comity requires the court of bankruptcy to compel persons whose rights under the bankruptcy law are jeopardized by such litigation to resort to the state court for protection.

2. SAME—INVOLUNTARY PROCEEDINGS—QUALIFICATIONS OF PETITIONERS.
    The bankruptcy act of 1898 (30 Stat. 544, c. 541 [U. S. Comp. St. 1901, p. 3418]) maintains throughout a clear distinction between the proof and the allowance of claims; and in section 59b (30 Stat. 561 [U. S. Comp. St. 1901, p. 3445]), which provides for the filing of a petition in involuntary bankruptcy by creditors having provable claims, the term "provable claims" is not the equivalent of "allowable claims." A creditor's claim is provable, and he may join in such a petition, notwithstanding the fact that he has received a preference, which he will be required to surrender before his claim is allowed.

3. SAME—CREDITOR HAVING ATTACHMENT LIEN.
    A creditor, who in good faith has obtained an attachment against his debtor's property within four months, and which would be rendered void by an adjudication in bankruptcy, may join in a petition to have the debtor adjudicated an involuntary bankrupt, although the attachment has not been formally released; but in such case the court will require the attachment lien to be released before an adjudication will be made, where such creditor is a necessary petitioner.

In Bankruptcy. This is a motion by and on behalf of Julius Sirlin, the plaintiff in an action in the state court, brought against the sheriff of Onondaga county, to vacate an injunction or restraining order granted on the application of Neil Brewster, receiver herein, on the 14th day of March, 1903, which, among other things, enjoins said plaintiff from collecting or transferring, disposing of, or in any manner interfering with a judgment obtained against said sheriff in said action.

¶ 1. Federal courts restraining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575.

Samuel Packard, for the motion.

Edgar F. Brown (M. A. Phelps, of counsel), opposed.

RAY, District Judge. On or about December 31, 1902, Herman J. Hornstein, the alleged bankrupt, executed and delivered to one Julius Sirlin a chattel mortgage to secure the sum of $500, a present, new consideration, it is alleged, covering all his property of every name and nature. This mortgage was filed in the proper clerk's office on the same day. This mortgage contained the usual power to take possession of and sell such mortgaged property. On the 6th day of January, 1903, said property, except some store fixtures, was removed by the mortgagee to a warehouse in the city of Syracuse, N. Y., advertised for sale under and by virtue of said chattel mortgage, and sold on the 14th day of January, 1903, and bid off by the mortgagee. On the 8th day of January, 1903, Alphons Dryfoos, Eugene Blum, and Feist Samuels commenced an action in the Supreme Court of the state of New York against said Hornstein to recover a debt of $1,232.45 arising on an express contract, and in said action obtained an order for the arrest of said Hornstein, alleging, among other things, that said chattel mortgage was made for the purpose of hindering and defrauding the creditors of said Hornstein, and was void. Thereafter, and on the 24th day of January, 1903, said order of arrest was vacated by the judge who granted it. March 16, 1903, said plaintiffs appealed from the order vacating the order of arrest, and such appeal is still pending.

On or about January 9, 1903, the plaintiffs in said action obtained therein a warrant of attachment against the property of said Hornstein, and delivered same to Charles W. Marvin, the sheriff of Onondaga county, N. Y., who by virtue thereof immediately levied said attachment on and took possession of said property as the property of said Hornstein. Soon thereafter said Julius Sirlin, he having demanded said property of the sheriff, who refused to surrender the possession thereof, commenced an action against said Marvin as sheriff to recover the value of said property, on the ground same had been unlawfully and wrongfully seized and converted by said sheriff to his own use. This action of conversion was tried in said court, and a judgment rendered in favor of the plaintiff against said defendant for the value of said property, $612.03. The date of said judgment is not shown, but on the 25th day of February, 1903, said sheriff (Marvin) appealed from said judgment to the County Court of the county of Onondaga, N. Y., and such appeal is still pending.

On the 25th day of February, 1903, said Alphons Dryfoos, Eugene Blum, and Feist Samuels, without discontinuing their said action in which such attachment was issued, and without releasing such attachment, filed in the District Court of the Northern District of New York, in which said district the said Hornstein resided, a petition in involuntary bankruptcy against said Hornstein, asking that he be adjudged a bankrupt, and alleging certain acts of bankruptcy. The claim alleged against Hornstein in the bankruptcy petition is the same sued upon in their action in the Supreme Court, and in which action the attachment was issued and levied. A subpoena

was duly issued; but, said Hornstein having departed from the state and not being found, service has not been made, and an application for an order to serve such subpœna by publication is now pending. After the said petition in bankruptcy was filed, on application of said petitioning creditors, Neil Brewster, of Syracuse, N. Y., was duly appointed receiver of the property of said Herman J. Hornstein, the alleged bankrupt, and he duly qualified as such. The property in question is still in the hands of said sheriff, who makes no personal claim to the same, but holds it under and by virtue of said attachment only. In such action in the Municipal Court the sheriff interposed the defense that such chattel mortgage was invalid as to creditors, not having been given for a new and present consideration.

Sirlin, the mortgagee, purchaser at the mortgage sale, plaintiff in the action against the sheriff, and claiming to own such property by virtue of his purchase at such mortgage sale, insists: (1) That the said petitioners in such involuntary proceedings in bankruptcy, not having released their attachment, have a lien and security, and were not in a position to institute such proceedings, and that the same and the appointment of the receiver are invalid. (2) That even if such proceedings are valid, or cannot be attacked for such reasons in this manner on this motion, the court in bankruptcy has no jurisdiction or power to restrain the said Sirlin, his attorneys or agents, from proceeding to argue the appeal from said judgment in his favor, taken to the County Court of the county of Onondaga, or to restrain the transfer or collection of said judgment; it having been regularly obtained by a person claiming adversely to the alleged bankrupt and such receiver and all other creditors, and he having been in the actual possession of the property claiming under his chattel mortgage at the time the sheriff levied the attachment, and it being a judgment against a third person, not the alleged bankrupt or the receiver.

The first important question is, are these proceedings in bankruptcy void for the reason the petitioning creditors did not first release their attachment lien? If in fact they had no lien, were they barred from instituting the proceeding, for the reason they had a warrant of attachment outstanding? This restraining order was obtained by the receiver, who represents and acts in the interest of all the creditors of Hornstein. In the suit for conversion, brought by Sirlin against the sheriff, who held under and by virtue of the attachment, and in which suit the petitioners in this bankruptcy proceeding came in and defended, and indemnified the sheriff, as they had the right to do, it was adjudged that they had no attachment lien or security; but from that judgment they have caused an appeal to be taken, and the question involved in that action is still undetermined. However, an amended petition expressly waiving the attachment lien has since been filed by permission of the court, and petitioners also file a waiver of the lien of the attachment in the suit in the Supreme Court.

. It is insisted by the receiver that, if this judgment against the sheriff is collected, it will transfer the title to the property held under the attachment to him; that he will be compelled to retain same, and will

have the right to retain same, to reimburse himself; that the general creditors will be without remedy, and the bankruptcy act will be defeated; that the court has power to intervene, and should intervene, until an adjudication in this proceeding is had, and a trustee is appointed, who may then take such proceedings as he shall be advised are necessary to protect the interests of all the creditors.

In Re Schenkein (D. C.) 113 Fed. 421, it is expressly held:

"A creditor of an alleged bankrupt, who obtains an attachment, has, in substance and effect, a lien on the property until the attachment is vacated, or becomes null and void by the adjudication, and to such extent, and up to that period, must be deemed to have a preference, and, therefore, not a provable debt, and, the attachment not being surrendered, has no standing to maintain a petition in involuntary bankruptcy."

In Re Burlington Malting Company (D. C.) 109 Fed. 777, 6 Am. Bankr. Rep. 369, it is expressly held:

"A creditor with an attachment, obtained and permitted by his debtor while insolvent, may not follow up his attachment with a petition for an adjudication of bankruptcy against his debtor, based upon the same claim, without a formal release of his levy. Such an attachment must be treated as a preference within the meaning of the provisions of the bankrupt law, and as a lien 'sought and permitted in fraud of the provisions of this act,' in the language of section 67e [U. S. Comp. St. 1901, p. 3449], and the claim is not provable unless the preference is surrendered, as required by section 57g [U. S. Comp. St. 1901, p. 3443]. In such a case the filing of the petition cannot be considered an unconditional release of the attachment."

In re Rogers Milling Co., 4 Am. Bankr. Rep. 540, 102 Fed. 687, held that:

"Under the present bankruptcy act, a creditor cannot prove any claim against the bankrupt's estate until he has surrendered any preference he may have obtained. Under section 59b [U. S. Comp. St. 1901, p. 3445], the creditor who may file a petition must have a provable claim. Therefore only creditors who have provable claims may file a petition, and one who has received a preference has not a provable claim."

See, also, In re Gillette & Prentice, 5 Am. Bankr. Rep. 119, 104 Fed. 769.

It would seem that a person who has commenced an action in the state court to recover a debt, and has secured an attachment and levy thereunder, ought not to be permitted to pursue another remedy in another court of the same jurisdiction to recover the same debt, or any part of the same. The same rule should perhaps apply in cases where a remedy is sought in the state court and the United States court to recover the same debt. The fact that the petitioning creditors in this proceeding have instituted it cannot be deemed an abandonment of or a discontinuance of the attachment proceedings in the state court. Those proceedings are not subject to the mere whim or will of the plaintiffs. The court might not permit their abandonment or discontinuance, except on conditions. If the petitioners should now discontinue this proceeding in bankruptcy, would they be out of court in the action in the Supreme Court, so far as the attachment proceedings are concerned? If so, it would be on the ground they had instituted another and an inconsistent proceeding in this court, subsequently abandoned. It must be held that both proceedings are pending and undetermined. But have the

petitioners herein received a preference, so as to preclude them from filing a petition in bankruptcy? This question will be further considered later.

The real purpose of this restraining order, sought to be vacated, is to protect the sheriff of Onondaga county against a lawful (this must be presumed) judgment resulting from his attaching and holding property in a proceeding in the state court which he (and the creditors of Hornstein) claims belongs to Hornstein (defendant in the attachment action and alleged bankrupt here), but taken from Sirlin's possession and claimed by him, and so enable the sheriff to hold the property for the benefit of the petitioners (plaintiffs in that action) and all other creditors until it shall be determined whether or not Hornstein is in fact a bankrupt. If he is so adjudicated, the attachment will fall. The appointment of a trustee will follow, and such trustee may institute an action to determine the title to the mortgaged property—the validity of such mortgage. That action will be for the benefit of all the creditors. If Sirlin gets his money from the sheriff, may he be sued by the trustee, and a recovery had of him, if the mortgage is found invalid? The sheriff will have the property, and may it be recovered of him, after he has paid Sirlin, if the mortgage is found invalid? There will be a complication if the judgment of Sirlin against the sheriff is affirmed on appeal and collected. Hence it would seem matters ought to remain in statu quo until a trustee is appointed. But should not resort be had to the state court? Can this court, even if these petitioners can maintain this proceeding, restrain the collection or transfer of that judgment regularly obtained? See White v. Thompson (C. C. A.) 119 Fed. 868, and Metcalf v. Barker, 9 Am. Bankr. Rep. 36, 23 Sup. Ct. 67, 47 L. Ed. ——.

But those cases are not decisive of the case now before the court. This proceeding in bankruptcy was instituted since the amendments of February 5, 1903, went into effect, and now the trustee, when appointed, may proceed in the court of bankruptcy to recover the property mortgaged to Sirlin, or its value. May not the court stay all pending proceedings in the state court that tend in any way to seriously complicate the situation, and put the property in question or its proceeds beyond the reach of the trustee when appointed?

In White v. Schloerb, 4 Am. Bankr. Rep. 178, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183, Mr. Justice Gray said:

"By section 720 of the Revised Statutes [U. S. Comp. St. 1901, p. 581] 'the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by law relating to proceedings in bankruptcy.' Among the powers specifically conferred upon the court of bankruptcy by section 2 of the bankrupt act of 1898, are to '(15) make such orders, issue such process and enter such judgments, in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act.' 30 Stat. 546, c. 541 [U. S. Comp. St. 1901, p. 3421]. And by clause 3 of the twelfth general order in bankruptcy [32 C. C. A. xvi, 91 Fed. xvi] applications to the court of bankruptcy 'for an injunction to stay proceedings of a court or officer of the United States, or of a state, shall be heard and decided by the judge; but he may refer such an application, or any specified issue arising thereon, to the referee to ascertain and report the facts.' 172 U. S. 657, 18 Sup. Ct. vi, 43 L. Ed. 1191."

It is plain that the judge of a court of bankruptcy may lawfully grant such restraining order, operative on and binding litigants in the state court, although strangers to the bankruptcy proceedings, as may be necessary for the enforcement of the provisions of the bankrupt act. This court has no hesitation in holding that express power is given by the act of Congress to courts of bankruptcy to enjoin all persons within its jurisdiction, whether litigants in a state court or elsewhere, from doing any act that will interfere with or prevent the due administration of the bankruptcy act. If this is not true, how frail and worthless is the law. In the face of a statute conferring the power, comity does not require the courts of the United States to compel persons whose rights are seriously jeopardized by proceedings in a state court to resort thereto for protection. This restraining order was properly granted, and must be upheld, if the petitioners had the right to institute this proceeding in involuntary bankruptcy.

In Re Challoner (D. C.) 98 Fed. 82, the wife of the bankrupt was restrained from collecting in the state court, pursuant to its judgment, alimony accruing after an adjudication, until the question of discharge should have been determined, and the order was upheld.

In Re Geister (D. C.) 97 Fed. 322, an action was pending in the state court upon a claim from which a discharge in bankruptcy would be a release, and Shiras, District Judge, refused to restrain its further prosecution until the petitioner's right to a discharge should be determined. It was held the petitioner should resort to the state court for the order. This court cannot sanction the propriety of that decision.

In Hill v. Harding, 107 U. S. 631, 2 Sup. Ct. 404, 27 L. Ed. 493, under a provision of the act of 1867 (14 Stat. 517, c. 176), the court said:

"The terms of this enactment are as broad and as peremptory as possible. 'No creditor whose debt is provable shall be allowed to prosecute to final judgment' any suit thereon against the bankrupt; and such suit 'shall upon application of the bankrupt be stayed.' This provision, like all laws of the United States made in pursuance of the Constitution, binds the courts of each state, as well as those of the nation. Upon the application of the bankrupt to the court, state or national, in which the suit is pending, it is the duty of that court to stay the proceedings, 'to await the determination of the court in bankruptcy on the question of the discharge,' unless there is unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge."

While all this is true, it does not militate at all against the power of the federal court to enjoin all parties to proceedings in the state court which, if carried on, would defeat the provisions of the bankrupt act or the propriety of so doing. It might, and in many cases would, defeat, to an extent, at least, the enforcement of the act to delay and make applications to the state court. Again, which court ought to construe and apply the statutes of the United States? There is no question of the power of the federal courts to restrain persons from proceeding in the state courts, when such proceedings interfere with the federal court in the exercise of its constitutional powers. Evidently it was the purpose of Congress to confer every power on the federal courts necessary to carry the act into full force and effect.

All the Supreme Court of the United States held or intended to hold in Hill v. Harding is that it is the duty of the court in which the action is pending to suspend or stay proceedings until the proper proceedings have been had in the other court; but this is far from holding that such other court has not the power to restrain the proceedings in the state court, in cases where such stay is necessary to carry the provisions of the bankruptcy act into full force and effect, and the power to make any order to that end having been expressly conferred upon the court in bankruptcy. In this case a struggle is going on in the state court for the purpose of determining whether or not the mortgaged property belongs to the bankrupt, and while the estate of the bankrupt is unrepresented, awaiting the appointment of a trustee, no proceeding in the state court ought to be permitted which will peril the rights of the general creditors.

We now return to the consideration of the question whether these petitioners have a provable claim, or have a preference, which prevents their instituting and maintaining involuntary proceedings in bankruptcy against Hornstein. To maintain this proceeding they must establish that Hornstein was insolvent, and had committed an act of bankruptcy within the four months preceding the filing of the petition. If defeated on that allegation, the petition will be dismissed. If, on the other hand, they remain quiet and proceed with their attachment, it may be superseded at any time by bankruptcy proceedings instituted by others, and their attachment overthrown. If these petitioners succeed in this proceeding and obtain an adjudication, their own attachment lien is overthrown. Hence both proceedings, taken together, cannot be regarded as an attempt to secure a preference over other creditors. No fraud is being attempted.

Subdivision "b" of section 59 (Act July 1, 1898, 30 Stat. 561, c. 541 [U. S. Comp. St. 1901, p. 3445]) provides:

"Three or more creditors who have provable claims against any person which amount in the aggregate, in excess of the value of securities held by them, if any, to five hundred dollars or over; or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt."

It will be noted that persons having provable claims may file the petition in bankruptcy. There is no suggestion that it must be an "allowable" claim. The word was evidently selected and used to express the meaning of Congress, and not haphazard.

By section 57a [U. S. Comp. St. 1901, p. 3443] it is provided:

"Proof and Allowance of Claims. a. Proof of claims shall consist of a statement under oath, in writing, signed by a creditor setting forth the claim, the consideration therefor, and whether any, and, if so, what, securities are held therefor, and whether any, and, if so, what, payments have been made thereon, and that the sum claimed is justly owing from the bankrupt to the creditor."

Then follows a provision in regard to instruments in writing. This constitutes the proof of a claim, and elsewhere the nature of the claim that may be proved is described (section 63 [U. S. Comp. St. 1901, p. 3447]).

Then section 57c [U. S. Comp. St. 1901, p. 3443]:

"Claims, after being proved, may, for the purpose of allowance, be filed by the claimants in the court where the proceedings are pending or before the referee if the case has been referred."

The act of proving the claim having been completed, they may be filed, not before, for the purpose of being presented for allowance, and that question considered. The question of allowance is to be considered independently of and subsequently to the act of proving the claim.

Then:

"d. Claims which have been duly proved shall be allowed, upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest, or their consideration be continued for cause by the court upon its own motion. e. * * * f. * * * g. The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences."

Amended February 5, 1903 (32 Stat. 797, c. 487) to read as follows:

"g. The claims of creditors who have received preferences, voidable under section sixty, subdivision b, or to whom conveyances, transfers, assignments, or incumbrances, void or voidable under section sixty-seven, subdivision e, have been made or given, shall not be allowed unless such creditors shall surrender such preferences, conveyances, transfers, assignments or incumbrances."

The word "allowed" is retained.

In subdivision "k" it is provided that claims which have been allowed may be reconsidered, etc.

By subdivision "m" it is provided:

"The claim of any estate which is being administered in bankruptcy against any like estate may be proved by the trustee and allowed by the court," etc.

It will be noted that the proof of a claim is one thing, and the allowance of such claim is quite another thing. Claims may be proved, but not allowed. They may be provable, but not allowable. They may be provable, and then allowed in part only, or on condition only. The statute does not say that the claims of creditors who have received preferences shall not be proved; but it does say that such claims shall not be allowed, unless or until the creditor surrenders his preference. By plain implication the proof of the claim is permitted. The claim of a creditor who has received a preference may be proved; but it cannot be allowed, unless he shall surrender the preference. Strange, indeed, is that construction of this law, in the face of those provisions, which will prevent a creditor from coming into court and proving his claim, having the amount of the preference received by him, if any (and that may be a serious and necessary question for determination, both as to the fact of preference and its amount), determined by the court, and then having his proved claim allowed on surrendering the preference. Any creditor has the right to come into court for that very purpose. To hold otherwise will logically prevent a creditor who has in fact received a preference, by way of lien or otherwise, for only a small part of his claim, coming into court and proving his claim, and then having

122 F.—18

it allowed on surrendering the preference—a mode of procedure the statute expressly permits. Subdivision "g" of section 57 [U. S. Comp. St. 1901, p. 3443], is rendered nugatory by holding that a creditor who has received a preference may not file a petition against his debtor in involuntary bankruptcy.

The "proof" of a claim must not be confused with the "allowance" of the claim. Those are two distinct acts or proceedings, and the allowance, absolute or conditional, may or may not result from and follow the proof of the claim. This distinction has been lost sight of in the cases cited.

In Collier on Bankruptcy (4th Ed., Hotchkiss) p. 442, it is said:

"In this connection it is important to recall the difference between a debt which may be 'proved' and one which may be 'allowed.' Generally speaking, every claim on which an action in law or in equity might have been maintained may be proved. Whether a debt so proved will be allowed is decidedly another matter. This distinction is perhaps somewhat artificial; the words 'proved and allowed' being in section 63 yoked together, and their equivalency to 'provable' apparently taken for granted."

Nothing in the act suggests or takes for granted that the words "proved" and "allowed," or the words "provable" and "allowable," are equivalents, or are to be given the same meaning. They are not yoked together, but connected by the conjunction "and." If a statute should say that a party might enter judgment and issue execution, it would not do to say that "enter judgment" and "issue execution" are yoked together, and hence have the same meaning. Nothing of the kind could logically be inferred from the connection of the two expressions by the conjunction. On the other hand, the distinction between "proved" and "allowed" is always made apparent. A claim must be proved before it can be allowed, and it is of course "provable," whether it may be allowed or not, if within the terms of section 63 [U. S. Comp. St. 1901, p. 3447]. When proved, if provable under section 63, the question arises whether or not it may be allowed. To prove the debt or claim presented, those acts must be done provided by section 57, subds. "a" and "b" [U. S. Comp. St. 1901, p. 3443]. After the acts of proving are completed, the claim is proved, and then what? Section 57, subd. "c," says:

"Claims after being proved may, for the purpose of allowance, be filed by the claimants in the court where the proceedings are pending, or before the referee if the case has been referred."

The subsequent subdivisions state what proved claims may be allowed. Could Congress have pointed out more specifically and pointedly the difference between "proved" and "allowed," and "the proving" and "the allowance" of a debt or claim? In section 63 [U. S. Comp. St. 1901, p. 3447] the act says:

"a. Debts of the bankrupt may be proved and allowed against his estate which are * * *. [Then follows an enumeration of the character of the debts, and there is no suggestion that, to be 'provable,' the claim must be 'allowable.' Congress would have indicated clearly or in some way its purpose to confine petitioners in involuntary proceedings to those having absolute allowable claims, had that been its intent.]

"b. Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate."

That is, after liquidation (step one), they may be proved (step two), as required by section 57a [U. S. Comp. St. 1901, p. 3443) and then filed for allowance (step three), and then allowed (step four), if allowable under that section, as provided in subsequent subdivisions. It is difficult to understand why a creditor who has a debt or claim against the alleged bankrupt that may be proved as required by the act has not a provable claim under the act; there being no definition of a "provable claim," except the inference to be drawn from the fact that the act itself states what claims are provable and how they may be proved. It would seem clear that a claim provable under and pursuant to the act is a provable claim within the meaning of the act.

Whether or not certain creditors ought in equity to be permitted to file petitions is not the question, but whether they have the right to file a petition under the terms of the law. If creditors who have received a preference ought not to be permitted to file a petition in involuntary bankruptcy, let the law be amended, and so state. If the claim or debt of the petitioning creditor must be one that is allowable, let the law be amended, and so state. Neither courts nor judges should import into a statute something not contained therein by express words or fair implication, for the purpose of doing what seems to them equity.

But equity demands that those creditors who have received a preference be allowed to file petitions. If it shall appear that their claim, after deducting any preference received, is less than the required amount, the petition will be dismissed. If they refuse to surrender the preference received, or release the security taken contrary to the provisions of the act, the same result would follow. Creditors who have received preferences are, or should be, always allowed to prove their claims. If it appears that a preference has been received, the order of "allowance," not "the proof" of the claim, will provide that the claim be allowed on the creditor surrendering his preference.

In the proceeding for the proof of a claim it may appear that a preference has been received. Then as a separate and distinct proceeding comes the question of allowance. If it is determined that the creditor has received a preference, the "provable" and proved claim will be allowed on condition that the preference is surrendered. The same distinction between claims "proved" and claims "allowed" is carried all through sections 55 and 56 of the bankruptcy act [U. S. Comp. St. 1901, p. 3442].

The remarks in Collier on Bankruptcy (4th Ed., Hotchkiss) pp. 407, 408, have been carefully considered. That "provable," as used in the bankruptcy act, is to be considered as the equivalent of "allowable," as used in the same act, is a contention that ought not to prevail. Those words are not used in the act as equivalents, or as expressing the same meaning. Nor are the acts of, or proceedings for, "proving a claim," and of "allowing a claim," the same. As before stated, they are, and were intended to be, independent acts and proceedings in the court of bankruptcy. This contention finds support in In re Norcross, 1 Am. Bankr. Rep. 644.

In the case now before the court the debt or claim of the petitioners is $1,232.45, while the attached property is worth only $600. The petitioners have a claim of over $500 in excess of the preference, if the attachment constitutes a preference. They have a provable claim, and one that may be allowed on condition that the preference is surrendered. Until the claim is "proved" the court is powerless to "allow" it, and until allowance is under consideration the question whether or not "a preference" has been received cannot be determined by the court. Again, the attachment of these petitioners is not four months old, and hence will fall on an adjudication in bankruptcy.

Says Collier on Bankruptcy (4th Ed., Hotchkiss) p. 408 (speaking of creditors who may not file petitions in involuntary bankruptcy):

"Nor creditors who have attachments. Here the cases are also quite uniform [citing In re Burlington Malting Co., 6 Am. Bankr. Rep. 369, 109 Fed. 777; In re Schenkein (D. C.) 113 Fed. 421, reversing on this point 7 Am. Bankr. Rep. 162]. There is some doubt whether an attachment less than four months old amounts to a 'preference.' It more nearly resembles a security. On broad principles of equity, however, it is an advantage, placing the creditor having it out of that class which alone can file an involuntary petition. Only after a surrender of it, or at least an offer to surrender, should he be allowed to file."

An examination of the case of In re Schenkein, 7 Am. Bankr. Rep. 162, discloses that in that case the present editor of Collier on Bankruptcy, one of our most experienced and able referees, acting as special master, held exactly the contrary doctrine, and declined to follow In re Burlington Malting Co., 6 Am. Bankr. Rep. 369, 109 Fed. 777; but he seems to have yielded, in editing this work, to the opinion in same case of Hazel, District Judge (113 Fed. 421), reversing him on this point.

Recurring to the text in Collier on Bankruptcy (page 408), this court is at a loss to understand how the court can decline to allow the filing of a petition in involuntary bankruptcy by a creditor having a provable claim of the requisite nature and amount, on the ground that "on broad principles of equity, however, it [the pending and unripened attachment] is an advantage." Nor can this court understand how or why having a mere advantage, which cannot possibly avail in the bankruptcy court, places "the creditor having it out of that class which alone can file an involuntary petition." Neither "broad principles of equity" nor a mere "advantage" (which can be of no benefit in the bankruptcy proceedings) can defeat the right of a creditor having a "provable claim" of the requisite nature and amount to file a petition in involuntary bankruptcy. In the opinion of this court, if such considerations are to defeat the right to file the petition, they must be incorporated into the law either by express language or necessary implication.

In re Rogers Milling Co., 4 Am. Bankr. Rep. 540, 102 Fed. 687, is not, in fact, an authority on this question. True, the District Judge expressed an opinion on the question, but decided the case and dismissed the petition on the ground that the alleged bankrupt was not insolvent.

Nor is In re Gillette & Prentice, 5 Am. Bankr. Rep. 119, 104 Fed. 769, authority that a creditor who has actually received a preference may not file a petition in involuntary bankruptcy. It was held that it could not be maintained, unless the ascertained preference was surrendered. The court said (page 126, 5 Am. Bankr. Rep., and page 774, 104 Fed.):

"It was held by this court in an unreported case, where the facts showed that a preference was obtained by a judgment creditor, that, the preference so obtained not being a fraudulent one, the creditor was not estopped from filing the petition. The judgment creditor did, however, by its preference, obtain a greater percentage of his debt than any other creditor; and therefore it was held that, in order to maintain its petition, such preference so obtained must be surrendered."

The court then decided, as one of the petitioners, the Bank of Batavia (and this was a necessary petitioner), had actually received a preference of $4,000, that—

"Upon deposit with the clerk of this court of the sum of $4,000, the amount of the preference obtained by one of the petitioning creditors, the Bank of Batavia, within 20 days from the entry and service of an order to that effect, an order of adjudication may be entered herein; otherwise, the proceeding is dismissed."

This decision was undoubtedly correct, and before these petitioners can proceed in this matter, and have an adjudication, they must formally discontinue and surrender their attachment lien; and the court will enjoin or restrain all persons from interfering with this property until an adjudication is had and a trustee appointed, or the petition is dismissed.

In this case the attachment proceedings were in no sense fraudulent in their inception, and the lien by virtue thereof, and the preference, if there be one, is in no sense fraudulent. The proceeding was one the plaintiffs in the action in the Supreme Court of the state, the petitioners here, had the moral and legal right to institute; and, when they discovered that Hornstein was insolvent, they had the moral and the legal right to file the petition in involuntary bankruptcy and procure an adjudication, if they could, in which case the attachment becomes void under the provisions of the bankruptcy act, the provisions of which they invoke. The mere fact that, before instituting this proceeding, they neglected to formally release the attachment, is not evidence of fraud, or of a fraudulent intent or purpose.

In Collier on Bankruptcy (4th Ed., Hotchkiss) pp. 381, 382, after describing how claims must be proved, it is said:

"A claim so proven should be received and filed by a referee receiving it, and amounts to a prima facie case; thus, unless objected to or continued for consideration, proving the debt for all purposes in the proceeding."

Then, at page 385:

"Filing and Allowance. Proofs of debt should be filed with the referee. * * * The distinction between 'proof' and 'allowance' is much the same as that between 'evidence' and 'judgment.'"

Without further discussion, it is held that these petitioners had the right to file this petition, and the motion to vacate the restraining

278 122 FEDERAL REPORTER.

order is denied. But the petitioners should formally procure their attachment to be vacated before proceeding further.

So ordered.