Argued November 18, writ allowed December 9, 1924.

# WESTERN BOND AND MORTGAGE CO. *v.* W. E. CREWS, CORPORATION COMMISSIONER.

## (231 Pac. 138.)

**Building and Loan Associations—Relation of Holder of Certificate of Stock to Association, Stated.**

1.  Holder of certificate of stock in a building and loan association is a mere stockholder, with all attendant rights and duties incident to that relationship, modified only by the specific provisions as to termination of relationship at time stated on surrender of certificate and payment to holder by association of specific sum.

**Corporations—Relationship of Bondholder to Corporation Stated.**

2.  The issuance and sale of an installment bond creates the relation of holder and creditor only, and on performance by holder confers on him the right of a creditor to enforce payment of the bond according to its terms.

**Building and Loan Associations—Corporation Issuing and Selling Installment Bonds Held not "Building and Loan Association" or "Savings and Loan Association" Within Statutes Prescribing Form of Organization.**

3.  Corporation issuing installment bonds *held* not a "building and loan association" or "savings and loan association" within Sections 6925–6953, Or. L., providing for the incorporation of such associations, and prohibiting corporations other than those incorporated in manner prescribed therein from doing a savings and loan or investment business on the building society plan, and specifying the powers of such an association, not embracing the power to issue and sell such bonds.

**Constitutional Law—Courts cannot Prevent Person from Engaging in Legitimate Business not Expressly or Impliedly Prohibited.**

4.  Where legitimate business is not expressly or impliedly prohibited by statute, the courts have no power to prevent any person from engaging in it.

See (1) 9 **C. J.**, p. 936.   (2) 14A **C. J.**, p. 635.   (3) 9 **C. J.**, p. 923 (1926 Anno.).   (4) 12 **C. J.**, p. 892.

Original  proceeding  in  *mandamus*.

In  Banc.

WRIT ALLOWED.

3.  What is building and loan association, see note in **Ann. Cas.** 1914A, 697.

For petitioner there was a brief over the names of *Mr. Arthur C. Spencer* and *Mr. Henry M. Isaacs*, with an oral argument by *Mr. Spencer.*

For defendant there was a brief over the name of *Mr. I. H. Van Winkle*, Attorney General, and *Mr. Willis S. Moore*, Assistant Attorney General, with an oral argument by *Mr. Moore.*

*Messrs. McCamant & Thompson* and *Mr. Ralph H. King*, on behalf of Union Savings & Loan Association.

RAND, J.—The plaintiff, Western Bond & Mortgage Company, a corporation duly organized and existing under and by virtue of the laws of this state, commenced these proceedings against defendant, the corporation commissioner of the State of Oregon, by petition filed in this court praying that an alternative writ of *mandamus* be directed to the defendant, commanding him, as such commissioner, to issue a permit authorizing it to issue and sell installment bonds or show cause for not having done so. In accordance with the prayer of said petition an alternative writ was issued, to which the defendant has shown cause by answer. Among other things, it is alleged in the alternative writ that the plaintiff is a corporation organized under the laws of this state; has been engaged in business in the City of Portland for more than twelve years prior hereto; has paid all annual license fees; has complied in all respects with the laws of this state; has done all acts required to be done to entitle it to issuance of such permit; is empowered and authorized by its articles of incorporation to issue and sell installment bonds of the kind and character for which the permit was

sought, and that the corporation commissioner declined to issue said permit upon the sole ground that the issuance and sale of said installment bonds "constitutes the doing of a savings and loan or investment business on the building society plan, and that under the laws of Oregon no person, firm or corporation is privileged or can legally be permitted to issue, sell, handle or deal in as a dealer, securities or obligations of the character of Exhibit 'A' attached, except an incorporated building and loan or savings and loan association organized in substantial conformity with the provisions of Chapter 5 of Title XXXIX, Or. L., governing the organization and conduct of the business of building and loan and savings and loan associations."

Exhibit "A" attached to and made a part of said petition is a form of the installment bonds which the petitioner proposed to issue and sell. The conditions annexed thereto are numerous and since none of them are material to this controversy no further reference thereto will be made. Excluding them, the form of said installment bond is as follows:

"Installment Bond Western Bond & Mortgage Com-
Company,
"Portland, Oregon, Founded 1911.

"This is to certify, that in consideration of the payment of —— Dollars, annually in advance during the period of ten years from date hereof, the Western Bond & Mortgage Company hereby promises to pay to —— of —— or the recorded owner hereof, at the expiration of said period, upon presentation and surrender of this Bond to the Company at its office in the City of Portland, Oregon, the sum of —— Dollars.

"If advance payments are made and with interest computed thereon at five and one-half per cent per annum compounded annually amount to —— Dollars before the maturity of this Bond, interest in cash at

five and one-half per cent per annum will be paid annually thereafter to the recorded owner, his heirs or assigns until maturity.

"This Bond is subject to the privileges, terms and conditions on the second page hereof, which are hereby referred to and made a part hereof, as fully as if set forth in the face of this Bond.

"In Witness Whereof, The Western Bond & Mortgage Company has caused this Bond to be executed in its corporate name and its corporate seal to be affixed at Portland, Oregon, this —— day of —— 19——.

　　　　　"WESTERN BOND & MORTGAGE COMPANY

　　　　　　　"By ——————, President.

　　　　　　　"Attest: ——————, Secretary."

In showing cause by answer the defendant admits all of the allegations of the alternative writ except it denies that it is the duty of the defendant corporation commissioner to issue said permit or to authorize and license the petitioner to issue and sell said installment bonds or that defendant declines to issue the permit upon the sole ground that the petitioner does not come within and has not complied with the provisions of Chapter 5, Title XXXIX, of Oregon Laws, relating to building and loan associations or savings and loan associations. For a further and separate return to said alternative writ and by way of answer thereto the defendant alleges: "That the doing of a savings and loan or investment business on the building society plan, whether mutual or otherwise, and whether issuing certificates of stock which mature at a time fixed in advance or not, consists in part in the issuance and sale of securities of a kind represented by Exhibit 'A,' attached to and made a part of the alternative writ herein, and having like terms and conditions, as will more fully appear by reference to such securities now being

issued and sold by the Equitable Savings & Loan Association, a corporation duly organized, existing and operating under and by virtue of the laws of the State of Oregon relating to building and loan and savings and loan associations, a copy of which securities, marked Exhibit 'A,' is attached to and hereby referred to and made a part of this answer. That, in the issuance and sale of the securities represented by Exhibit 'A' attached to the alternative writ herein, the petitioner herein would be doing an investment business on the building society plan within the purview of said Section 6948, Oregon Laws.''

These allegations of the answer were denied by the reply. Testimony tending to support these issued was offered and has been considered, but it presents no question for decision not raised by the pleadings themselves.

It is contended by thé defendant that the installment bonds which the petitioner proposed to issue and sell and guaranteed maturity investor's stock of the kind and character now being issued and sold by the Equitable Savings & Loan Association, a corporation organized under Chapter 5 of Title XXXIX, Or. L., are in legal effect one and the same thing, and constitute an obligation which no corporation not organized under and coming within the purview of said act is permitted by statute to enter into. Attached to the return and referred to as Exhibit "A" is a blank form of a certificate of stock which, when issued, constitutes the guaranteed maturity investor's stock of the Equitable Savings & Loan Association, which, it is contended by the Attorney General, is in legal effect the same thing as the proposed installment bond. This certificate recites that in consideration of certain payments to be made at stated inter-

vals, the holder thereof is the owner of ten shares of the capital stock of the Equitable Savings and Loan Association, known as guaranteed maturity investor's stock of the par value of $100 per share, and that all payments having been duly made that association will pay on a stated day to the then legal holder of that certificate upon the surrender thereof, $1,000.

1, 2. While the issuance and sale of the two instruments in question may produce for the holders thereof the same result, namely, the payment of a stated amount of money at a given time, the instruments themselves are entirely dissimilar in their nature and legal effect and create between the issuing corporations and the holders thereof entirely dissimilar relations. The issuance and sale of a certificate of stock of that character makes the holder a mere stockholder of the corporation and creates in him no other relation than that of a stockholder to a corporation with all of the attendant rights and duties incident to that relationship, modified only by the unusual and specific provisions contained in it, namely the termination of that relationship, at a time stated, upon the surrender of the certificate and the payment to the holder by the corporation of a specific sum of money. The issuance and sale, however, of an installment bond of the character here involved creates, between the issuing corporation and the holder thereof the relation of debtor and creditor only, and, upon performance by the holder, confers upon him the right of a creditor to enforce payment of the bond according to its terms.

3. The contention that the issuance and sale of the proposed installments bonds by petitioner would constitute "the doing of a savings and loan or invest-

ment business on the building society plan" does not seem to be well founded. The issuance and sale of bonds of that character under proper state regulation, unless prohibited by statute, is lawful, and unless there is some provision of the statute which prohibits a corporation not organized under and doing business in conformity to Chapter 5 of Title XXXIX from issuing and selling these bonds the defendant corporation commissioner exceeded his authority in refusing to grant a permit to the petitioner.

Chapter 5 of Title XXXIX, comprising Sections 6925–6953, Or. L., provides for the incorporation of building and loan or savings and loan associations and prescribes the manner in which the business of such an association shall be conducted. The terms "building and loan" and "savings and loan," as employed in the statute to describe an association organized for the purpose of conducting the business provided for in said Chapter 5, are synonymous and mean the very same thing: *Investment Company* v. *Stanley,* 38 Or. 319 (63 Pac. 489, 84 Am. St. Rep. 793, 58 L. R. A. 816).

Section 6948, Or. L., provides that "the name building and loan association as used in this act shall include all corporations, societies, organizations, or associations doing a savings and loan or investment business on the building society plan, whether mutual or otherwise, and whether issuing certificates of stock which mature at a time fixed in advance or not."

The Attorney General contends that the issuance and sale of the investment bonds in question is the doing of a savings and loan or investment business on the building society plan within the meaning of the statute, and that the provisions of Section 6948 exclude all corporations from the issuance and sale

of bonds of that character unless they are organized under and in conformity to the provisions of said Chapter 5. In determining this question it is necessary to ascertain from the statute whether an association organized under the provisions of Chapter 5 is itself authorized to issue and sell bonds of the nature of those which the petitioner proposes to issue and sell, and if not, then is there any other statute which prohibits a corporation, such as the petitioner whose corporate powers are sufficiently comprehensive to entitle it, unless forbidden by statute, to issue and sell such bonds, from doing so. For it must be assumed that the legislature, in enacting Chapter 5 of Title XXXIX, intended to clothe building and loan associations with sufficient powers to do ''a savings and loan or investment business on the building society plan,'' and that unless the power was given for the association to do an act, the act itself was not a part of such plan.

The powers that a building and loan or savings and loan association, organized under the laws of this state, may lawfully exercise, are limited and restricted to those conferred upon them by the provisions of Chapter 5 of Title XXXIX. With but few exceptions, of which a building and loan or savings and loan association is one, corporations are organized under Chapter 3 of Title XXXIX, Or. L., and are permitted to specify in their articles of incorporation any lawful enterprise, business pursuit or occupation in which they propose to engage, and while acting within the scope of the powers thus specified in the articles their acts are authorized. Building and loan associations are organized for a specific purpose and under a special law which accords to them peculiar privileges not common to other corporations, and restricts them to the exercise of such

powers only as are prescribed by the statute under which they are authorized to do business. The primary purpose for which they are organized is to receive and accumulate contributions or deposits from their members and to loan the same for the mutual benefit of the members.

The form of the articles of incorporation, to which its incorporators must subscribe, and the contents thereof, are prescribed by Section 6925. In carrying out the purposes for which the corporation is organized and as an incident of the corporate entity, an association of that nature is empowered to sue and be sued, to contract and to be contracted with, to acquire and sell such real or personal property as may be necessary or convenient to carry on its business, to borrow money for the purpose of making loans and paying withdrawals (Section 6926), "to adopt appropriate by-laws to govern and prescribe the methods and the officers by whom the business of the association shall be conducted. * * The by-laws, among other things, shall especially provide for the character and methods of conducting the business of the association, with rules governing the admission of members, the sale of its shares, the amount of admission fee, the amount of and the periods when dues shall be paid by the members to the association, the disposition and investment of the funds of the association, including loans, the amount of premiums, to be paid for and the rate of interest on loans." But the statute expressly provides that these by-laws "shall be in conformity with the provisions of this act and the laws of this state." Section 6928. Section 6930 provides for the making of loans and what security shall be taken therefor and authorized the directors to loan upon the security of the shares in the association not to exceed 90 per

cent of their withdrawal value, and also provides that loans or investments may be made upon or in bonds of the United States and of the States of Oregon, Washington or Idaho and upon bonds of counties, school districts and other municipalities and local improvement districts in said states, as are approved by the corporation commissioner; and also notes or bonds secured by first mortgages on improved real estate appraised and valued as provided in the act. Section 6933 provides for the withdrawal of shares and for the payment of surrendered stock by the association. Section 6934 authorizes the association to purchase any real estate at any public or private sale upon which the association has a mortgage, judgment, lien or other encumbrance or in which it has an interest, and after it is thus acquired to dispose of the same. Section 6935 forbids the issuance of noncontributing stock and authorizes the association to issue different classes of stock, and gives express authority "to issue a class of stock to be known as the reserve fund stock, to be paid for in installments or in full at the time of subscription."

This enumeration of the powers possessed by a building and loan association is not intended to be exhaustive in the sense that the statute does not authorize the exercise of other incidental powers but it is exhaustive in the sense that it is on these lines only that the statute authorizes an association of that nature to exercise its corporate powers. There is no provision in Chapter 5 which authorizes or permits an association of that character to issue and sell bonds of the nature of those proposed by the petitioner, nor is there any testimony that any building and loan association in the state has ever attempted to issue or sell bonds of that character. As the power to issue and sell such bonds does not reside

in building and loan associations, the issuance and sale of such bonds is not the doing of a savings and loan or investment business on the building society plan within the meaning of the statute, for it must be obvious that the legislature, in providing that no corporation except a building and loan association could do a savings and loan or investment business on the building society plan, did not intend to include as a part of the plan anything that the association itself could not lawfully do.

The issuance and sale of installment bonds of the kind and character of those which the petitioner proposed to issue is not unlawful unless made so by statute. Our attention has been directed to no statute prohibiting the same. It is not contended by the defendant that the issuance and sale of these bonds by the petitioner is forbidden by any statute other than said Chapter 5 of Title XXXIX. That chapter in itself contains no inhibition against any corporation doing any act unless such act amounts to the transaction of ''a savings and loan or investment business on the building society plan, whether mutual or otherwise, and whether issuing certificates of stock which mature at a time fixed in advance or not.'' The issuance and sale of these bonds does not fall within that inhibition, as it is not the transaction of a savings and loan or investment business on the building society plan.

It is conceded that the petitioner is a reputable and responsible concern having large assets and transacting its business upon honorable lines. It is not charged with having been involved in any fraudulent transaction, but it is contended that other corporations not solvent or reputable may engage in the business of issuing and selling bonds of that character in fraud of the public. Any business in the

112 Or.—43

hands of designing, unscrupulous and dishonest persons may be conducted fraudulently. Even in the sale of the simplest commodities, fraud may be practiced, but this affords no ground upon which the business itself can be prohibited in the absence of some statute or power of regulation conferred upon someone by the legislature of the state.

4. The securities in question and those dealing in them are subject to regulation by the defendant corporation commission. If the powers conferred upon the corporation commissioner, to effectually regulate and control the business of issuing and selling bonds of the character involved here, are insufficient to prevent fraud, it is within the province of the legislature to enlarge those powers and make them sufficient to accomplish that purpose. Where any legitimate business is not expressly or impliedly prohibited by statute, the courts have no power to prevent from engaging in it.

For these reasons the prayer of the petitioner must be sustained and a peremptory writ be issued directing the defendant corporation commissioner to issue the permit prayed for.          WRIT ALLOWED.

BURNETT, J., absent.