This is a suit to foreclose a lien on personal property pledged to plaintiff to secure the payment of a *Page 273 
loan made on October 11, 1926, by plaintiff to defendant Guaranty and Loan Company, a private corporation, in the amount of $5,000, with interest from date until paid at 8 per cent per annum. Plaintiff alleges, in substance, that the property so pledged by Guaranty and Loan Company consisted of a good and valid promissory note for $13,500, in words and figures following:
"$13,500.00 John Day, Oregon, October 23, 1924.
"On or before five years after date, without grace, I promise to pay to the order of Charles V. Bales the sum of Thirteen Thousand Five Hundred and no/100 Dollars in U.S. Gold Coin, with interest thereon in like gold coin at the rate of 8 per cent per annum from date until paid, for value received. Interest to be paid annually, and if not so paid the whole sum of both principal and interest to become immediately due and collectible at the option of the holder of this note. And in case suit or action is instituted to collect this note, or any portion thereof, I promise to pay such additional sum, in like coin, as the court may adjudge reasonable as attorney's fees in said suit or action.
"Horace D. Stewart."
This note was secured by a mortgage on certain real property situate in Grant county, Oregon, which mortgage was recorded in the Mortgage Records of Grant county on August 27, 1925.
During the month of August, 1926, Bales, payee in the note and the mortgage securing it, endorsed the note in blank upon the back thereof and delivered it to defendant Guaranty and Loan Company, and, on August 14, 1926, executed and delivered to that company a written assignment of the mortgage, which assignment was recorded in the Mortgage Records of Grant county on March 25, 1927. *Page 274 
On October 11, 1926, Vera E. Holt, plaintiff herein, loaned to defendant Guaranty and Loan Company the sum of $5,000, at 8 per cent per annum from date of loan. As security therefor the loan company endorsed in blank on the back thereof the promissory note for $13,500 above set out, and delivered it, with the mortgage securing the same and the assignment thereof, to plaintiff, and, at the same time, made, executed and delivered to the plaintiff its written assignment of the mortgage, which assignment was duly recorded in the Mortgage Records of Grant county on March 25, 1927.
The plaintiff alleges that the defendant Guaranty and Loan Company has failed and refused to repay the sum of $5,000, or any part thereof, and now is indebted to plaintiff in the sum of $5,000, with interest thereon at 8 per cent per annum from October 11, 1926, until paid. She alleges that at all times since October 11, 1926, she has had possession, and now holds possession, in Multnomah county, Oregon, of the above-described note for $13,500 and the mortgage given to secure its payment. She further alleges:
"That defendant Charles V. Bales claims that his aforesaid endorsement and delivery of the said Stewart note to defendant Guaranty and Loan Company and his aforesaid assignment and delivery of the said Stewart mortgage were obtained by fraud on the part of the said Guaranty and Loan Company, or that the said Company obtained said endorsement, assignment and delivery by him for a purpose inconsistent with the right upon the part of the said * * * Company to pledge the said Stewart note and mortgage to this plaintiff, and, therefore, the said defendant Charles V. Bales claims some right, title or interest in and to said Stewart note and mortgage; but this plaintiff alleges that she made the said loan to defendant Guaranty and Loan Company and took the said Stewart note and mortgage to secure the said loan, without notice or *Page 275 
knowledge that said * * * Bales had, or claimed, any interest therein, and this plaintiff alleges that whatever interest the said * * * Bales has in, or to, or claim upon, the said Stewart note and mortgage is inferior in time and right to the rights and claims of the plaintiff therein and thereto. * * *"
Plaintiff further alleges that prior to the time that the interest upon the Stewart note was payable, defendant Bales wrongfully represented and declared to Stewart that plaintiff had no right, title or interest in or to that note, and wrongfully demanded of Stewart that he refuse to pay the interest due or to become due thereon to the plaintiff, or to any person other than himself; and that, because of such wrongful representations, statements and demands, Stewart refused, and still refuses, to pay plaintiff the interest due on the note.
Plaintiff avers on information and belief that Bales has collected from Stewart the interest due on the note and mortgage on October 23, 1927; and she further alleges that Bales has threatened to prevent her from collecting any interest due or which shall become due on the same in the future, and that, unless restrained, he will collect the interest next falling due upon this note and mortgage. She prays for a decree awarding her a judgment against defendant Guaranty and Loan Company for $5,000, with interest at the rate of 8 per cent per annum from October 11, 1926, until paid, and for costs and disbursements; for judgment against defendant Bales for her costs and disbursements; that the pledge hereinbefore described be foreclosed, and that the promissory note of Horace D. Stewart and the mortgage executed to secure the payment thereof be sold as upon execution at law; that the claims and rights, if any, of the defendants, in or to the Stewart *Page 276 
note and mortgage be adjudged to be subsequent and subordinate to the rights of the plaintiff in and to the same by reason of the pledge of such note and mortgage; and that the surplus arising from the sale thereof, after payment of the amount due the plaintiff and the costs of the sale, be paid out as the court might direct; that defendant Bales be required to account for and pay to plaintiff all interest which he has collected upon the note and mortgage since October 11, 1927; that a temporary restraining order be made and entered enjoining him from further collections thereon, and that plaintiff have such further and different relief as should seem meet and proper to the court.
Defendant Guaranty and Loan Company was duly served with process, but defaulted.
Defendant Bales demurred to the complaint upon the ground that it failed to state facts sufficient to constitute a cause of suit; that the court was without jurisdiction; and that the plaintiff had not the legal capacity to sue. The demurrer was overruled. This defendant then answered and put at issue the material allegations of the complaint, and, for a further and separate answer and defense, alleged that the note and mortgage theretofore executed to him by Horace D. Stewart and wife were given for a valuable consideration.
He then alleged that a written agreement was entered into in August, 1926, between defendant Guaranty and Loan Company and himself, wherein and whereby it appears that the Pendleton Packing Provision Company was indebted to defendant Guaranty and Loan Company in approximately the sum of $52,000, part or all of which was secured by mortgage on the property of the provision company, and was likewise indebted to defendant Bales, the answering defendant, *Page 277 
in an amount of approximately $15,000; and Bales, desiring to prevent foreclosure of the mortgage held by Guaranty and Loan Company and the sale and liquidation of the assets of the Provision Company, agreed with the loan company that the correct amount due to it from Pendleton Packing Provision Company should be ascertained, that a note should be made by the provision company for such amount, secured by a mortgage on all of its real and personal property, and that Bales would carry this note and mortgage for a period of twelve months and make his note or notes to the Guaranty and Loan Company for the full amount of such indebtedness owing to it by the provision company, due twelve months after date, with interest at the rate of 7 per cent per annum; such note or notes to be secured by the following:
"1. Note and mortgage now held by party of the second part (Bales), said note and mortgage being for $13,500."
Then follows description of additional personal property not material to this case.
The agreement further provided that the loan company should use its best endeavor to realize on certain stock subscription notes made to the provision company, and that any such sums should be credited upon the note made by the provision company.
Defendant alleged that, upon the execution of this written agreement, he made and executed seven promissory notes in favor of the Guaranty and Loan Company, six for the principal sum of $2,500 each, and the other for $2,151.45, which notes he left in the possession of A.M. Haradon, its president, to be delivered to that company at such times as it should perform the stipulations contained in the aforesaid written agreement to be kept and performed by it; that on or about *Page 278 
August 20, 1926, at the request of Haradon, this defendant forwarded to him the note described in the agreement and the mortgage securing the same, together with other notes and mortgages, it being understood between defendant Bales and Haradon that these notes and mortgages would be delivered to the Guaranty and Loan Company only and at such times as that company should keep and perform the stipulations and agreements to be kept and performed by it as set forth in the agreement, and that any deliveries of notes and mortgages, whether the personal notes of defendant Bales or the five remaining promissory notes and mortgages described in the agreement, were conditioned solely upon the stipulations and agreements set forth in the original contract between Guaranty and Loan Company and defendant Bales.
The defendant further alleged that, when he forwarded the promissory notes and mortgages to Haradon, he signed in blank five assignments of mortgage, which were to be completed and executed in due form upon the performance by the Loan Company of the stipulations set forth in the written agreement. He alleged that the loan company wholly failed and neglected to keep and perform any of the stipulations contained in the agreement, and that, on October ____, 1926, by the mutual consent of the parties thereto, the agreement was repudiated and set aside and Haradon returned to him all notes which had been sent to and left with him by defendant, excepting only the note of Horace D. Stewart, which he promised to return forthwith to the defendant, and alleged that this note and the mortgage securing it were never delivered to the Guaranty and Loan Company nor was that company at any time the owner thereof or entitled thereto. The defendant further averred that at no time did he assign *Page 279 
"to the Guaranty and Loan Company, or to any one else," the Stewart note or the mortgage securing it. He then alleged that no part of that note has been paid, and that there is now due thereon the sum of $13,500. He alleged that the pretended transfer of the Stewart note and mortgage from defendant Guaranty and Loan Company to the plaintiff herein on October 11, 1926, if, in fact, such transfer was made, was wrongful and unlawful, and without any authority whatever; and that, at the time of the pretended transfer, the plaintiff had full knowledge of the conditions under which Haradon had the note and mortgage in his possession, and that neither Haradon nor the Guaranty and Loan Company had any right of ownership or possession thereof. He alleged that he at all times had been, and then was, the owner of this note and mortgage and entitled to the possession of it; and that no consideration ever passed from the Guaranty and Loan Company, or from Haradon, to him, for that note and mortgage. He asks for a decree of the court that plaintiff's complaint be dismissed, and that he be decreed to be the owner and entitled to the immediate possession of the note and mortgage in question.
Plaintiff replied to the new matter alleged in defendant's answer, and, for a further and separate reply, alleged that at the time she acquired the Stewart note and mortgage she was without notice or knowledge of any defects or infirmities in the right, title or ownership of the defendant Guaranty and Loan Company in and to the same, and that prior to the time of its acquisition by her from the loan company, defendant Bales endorsed the note in blank and executed an assignment of the mortgage, and delivered both note and mortgage in such a manner as to endow the defendant company with all the attributes of ownership; and that *Page 280 
"at the time that the plaintiff acquired the said Horace D. Stewart note and mortgage from defendant Guaranty and Loan Company, she believed and relied upon the fact to be that the said Guaranty and Loan Company was the absolute owner of the said * * * note and mortgage."
The trial court decreed that the pledged property be sold, and that from the proceeds thereof, the plaintiff should be paid the principal and interest due her from the Guaranty and Loan Company, and the overplus, if any, should be turned over to defendant Bales. From this decree, the named defendant appeals, assigning as error, among other things, the overruling by the court of his demurrer to plaintiff's amended complaint.
The law of this state provides:
"A lien upon real or personal property, other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit": Oregon Code 1930, § 6-501.
In a case such as the one at issue, where ownership of pledged property is involved, the pledgor insolvent, and its managing officer absent from the state, it is peculiarly fitting that equity be invoked. For, as written by an eminent author:
"Jurisdiction exists over pledges of chattels or of things in action; the pledgee may enforce his security by a suit for a foreclosure and sale." 1 Pomeroy's Equity Jurisprudence (4th Ed.), § 164.
This holding is not affected by Senate Bill No. 117, "authorizing the sale by banks, trust companies and national banking associations of pledged collateral without judicial proceedings," enacted at the regular session of the Thirty-Sixth Legislative Assembly. *Page 281 
As shown by our statement, defendant Bales filed a demurrer challenging the right of the plaintiff to maintain this foreclosure proceeding, and asserted that it was her duty as the pledgee of the collateral note to collect all sums as they became due thereon and apply the proceeds on the indebtedness until paid, "and return the balance to the pledgor." It will be noted that the pledgor was the insolvent defendant company, and that its president, the person who pledged the note, had long since departed from the confines of Oregon. However, following the overruling of the demurrer, this defendant answered over, and earnestly seeks affirmative relief at the hands of equity.
With relation to a suit or action to forclose a pledge, the authors of Corpus Juris say:
"Where the debt or obligation for which the property is pledged matures and is unpaid, or the pledgor otherwise defaults, the pledgee, regardless of any legal or summary remedy he may have, such as the right to sell without judicial process, may, at his election, file a bill in equity for the foreclosure of the pledge and a sale of the pledged property under an order of court; and in some jurisdictions this remedy is either expressly or impliedly authorized by statute. Resort to this remedy is particularly appropriate where there are conflicting claims as to the ownership and right of possession of the pledge. * * * The advantages of such a foreclosure are that it concludes the rights of all parties in interest, and prevents any recourse against the pledgee for violation of his duties to the pledgor or to third persons, and that it enables the pledgee to buy at the sale": 49 C.J., § 276, "Pledges."
Jones on Collateral Securities (3d Ed.), § 655, thus states the rights of the pledgee to recover on negotiable paper held as security:
"While the pledgee himself cannot, without express authority for this purpose, sell commercial paper *Page 282 
pledged as collateral, yet a court of equity may, at least under special circumstances, order a judicial sale of it. `But the question of the right of a pledgee to come into court, and have a decree for a judicial sale of the pledge, is an entirely different question. This was always a well-recognized head of equitable jurisdiction, even where the pledgee or mortgagee had a right to sell the property. The sale being under the direction and control of the court, it has the power, as it is its duty, to see to it that the property shall not be sacrificed; and hence such a sale is not liable to the evils or abuses to which a sale by the party himself is subject. Just when and under what circumstances a court would or should order a sale of commercial paper or other collateral of similar character it is not necessary to consider. The right to do so, at least under special circumstances, is undoubted. * * *' Under special circumstances, a pledgee of negotiable paper may resort to a court of equity for a sale of the security, and may foreclose the pledge in the same manner and with like effect as if the transaction were a mortgage; and it is rather intimated that the same rule would apply in case of an ordinary pledge of such paper."
The testimony shows that the endorsement and delivery of the note by defendant Bales, the payee therein, to Guaranty and Loan Company, was made when Haradon was president of the loan company, and that, so far as third persons are concerned, it was made for the benefit of that company. It further shows that both the note and the mortgage securing it were thereafter assigned to this plaintiff.
It has long been the law of this jurisdiction that the lawful assignment of a negotiable promissory note payment of which is secured by a mortgage carries with it the mortgage:Roberts v Sutherlin, 4 Or. 219; Barringer v. Loder, 47 Or. 223
(81 P. 778); Roth v. Troutdale Land Co., 83 Or. 500
(162 P. 1069); U.S. Nat. Bank v. Holton, 99 Or. 419 (195 P. 823). And, as Dr. *Page 283 
Andrew C. Smith aptly said when testifying on behalf of the plaintiff, "The Guaranty and Loan Company was Haradon, and Haradon was the * * * Loan Company."
The plaintiff testified that she was in the habit of transacting her own business, and that Haradon and her husband were brothers-in-law. She identified a cashier's check drawn on the West Coast Bank for $5,000 as her property, and testified that it represented $5,000 that she had received from her father's life insurance in 1899. She testified that for a while she had it invested in certain mortgages in Eastern Oregon, but withdrew it and placed it in a savings account with the West Coast Bank, and ultimately, being in search of a safe loan at a higher rate of interest than paid by the bank, withdrew it from the bank and loaned it to defendant Guaranty and Loan Company. She testified that, prior to making the loan to the defendant company, she was informed and believed that she was receiving triple security therefor; that Haradon, the president of the company, pointed out to her that her security would consist, first, of the Stewart note and mortgage; second, of the Bales endorsement thereof, and, third, the endorsement of Guaranty and Loan Company. She swore that when she accepted the Stewart note and mortgage as security for her loan, she knew nothing of any wrong or fraud in relation to the transaction; and that it was not until months afterwards that she learned that the loan company had transferred the instruments to her without right.
R.B. Baird, bookkeeper and treasurer of defendant Guaranty and Loan Company in October, 1926, testified that the company received and deposited to its credit in the Bank of California the proceeds of the check for $5,000. The testimony abundantly shows that the plaintiff *Page 284 
loaned to the company the $5,000 that was received by it; and there is no testimony in the record that establishes, or tends to establish, that she had any information or knowledge as to the right of the Guaranty and Loan Company to pledge this note and mortgage as security for the loan. As stated by the bookkeeper and treasurer, the defendant company was engaged in the transaction of business during all of October, 1926, and did not become insolvent until early in 1927.
In Harth v. Pollock, 97 Or. 663 (193 P. 202), this court held that, where one of two persons must suffer by reason of the wrongful act of a third, the person whose act or omission made the injury possible should suffer. In rendering the opinion in that case Mr. Chief Justice McBRIDE said, among other things:
"We see no reason to differentiate this case from the multitude of other cases where persons have signed their names to blank notes or other negotiable paper, and left it in the hands of those who have made an unconscionable use of it. The fact that the instrument in this case was a deed instead of a negotiable instrument is a distinction without a logical difference. Neither, in the view of the writer of this opinion, is the intent with which the conveyance was left with Irwin of importance here. When a man leaves with a stranger an instrument executed and acknowledged with every legal formality necessary to indicate that he has made a conveyance of the property, but with the name of the grantee left blank, he ought, in common prudence, to contemplate the possibility that the depositee, if dishonest, might make an improper use of such instrument, and if such use is made of it he, and not the person whom he has put it in the power of his agent to defraud, ought to suffer the loss."
He then quoted from the case of Guthrie v. Field, 85 Kan. 58
(116 P. 217, 37 L.R.A. (N.S.) 326), as follows:
"One who arms another with such an uncontrollable power must know that, if this chosen agent shall prove *Page 285 
dishonest, that is likely to happen which, in fact, happened here; and, if such result follows, it must be regarded as the consequence of his own imprudence."
The contentions of defendant Bales are not consistent each with the other. He asserts, in effect, that it was the duty of the plaintiff to collect the sums of money on the note pledged as security as they fell due, apply the proceeds to the indebtedness until paid, and return the balance to the pledgor. A strange contention, in view of defendant's averments and prayer. For he says in his answer that the plaintiff has neither right, title or interest in the Stewart note and mortgage, and prays for a decree dismissing the complaint as to himself, and that he be decreed the owner and entitled to the immediate possession of that note and mortgage. These conflicting contentions, together with the other special circumstances set forth in our statement, illustrate the requirement for an equitable proceeding to protect the rights of all interested parties. The testimony shows that the plaintiff was a holder in due course of the Stewart note, as defined by Oregon Code 1930, § 57-409. Nor was her title defective as such a title is defined by section 57-405 thereof. For an elaborate discussion of these sections, see Bank ofCalifornia v. Portland Hide and Wool Co., 131 Or. 123
(282 P. 99), where Mr. Justice BEAN, speaking for the court, wrote:
"The strictness of the general equity doctrine of constructive notice is not applied to a purchaser for value of negotiable instruments before maturity. * * * Only knowledge of such facts as would make his purchase an act of bad faith is sufficient to impeach his title as a holder in due course."
Defendant Bales contends that, at the time the plaintiff took the note in question, she had actual notice of the defect in the title thereto, for the reason that *Page 286 
practically two years' interest was due on the note at the time of its assignment, and that the note contained the provision that the interest was "to be paid annually and if not so paid the whole sum of both principal and interest to become immediately due and collectible" at the option of the holder thereof. We cannot agree with the defendant. There is no testimony in the record to indicate that any holder of the note ever exercised his option to declare it due and payable. A leading case touching directly upon this issue is Merchants' Nat. Bank v. Smith,110 S.C. 458 (96 S.E. 690, 11 A.L.R. 1274), where the court held that overdue interest on an unmatured note does not affect the good faith of one purchasing it. In a valuable annotation to this case appearing on page 1278 of 11 A.L.R., we find the following observation:
"The courts seem to agree that the mere fact that interest is overdue on the note does not mature the note, and therefore a purchaser is not subject to equities on the ground that he has purchased overdue paper."
Among the cases supporting the doctrine just noted is U.S.National Bank v. Floss, 38 Or. 68 (62 P. 751, 84 Am. St. Rep. 752).
This case is affirmed, without costs to either party.
BEAN, C.J., BELT and CAMPBELL, JJ., concur. *Page 287