Argued July 19; affirmed September 20, 1932

# MOTT *v.* GUARDIAN BUILDING & LOAN ASSOCIATION .ET AL.

### (14 P. (2d) 447)

*Glenn E. Husted,* of Portland (Barnett H. Goldstein, of Portland on the brief), for appellant Mott.

*John W. Kaste,* of Portland (Herbert L. Swett, of Portland, on the brief), for appellant Leasehold Corporation.

*Loyal M. Graham,* of Forest Grove, for interveners appellants.

*John C. Veatch,* of Portland (Joseph, Haney & Veatch, of Portland, on the brief), for respondent West Coast Life Insurance Co.

*Thomas G. Greene,* of Portland, for respondent Bank of California National Association.

*Geo. Black, Jr.,* of Portland (Platt, Platt, Fales, Smith & Black, of Portland, on the brief), for respondent Frank G. Scholl.

CAMPBELL, J. The Guardian Building & Loan Association, hereinafter referred to as the Guardian, is a corporation duly organized under the laws of the state of Oregon relating to such associations: Oregon Code 1930, section 25-301, et seq. Under its articles of incorporation, its authorized capital is $10,000,000, divided into 100,000 shares of the par value of $100 each. It is authorized to carry on the business of a building and loan association, or savings and loan association with power, among other things:

"To receive money and execute debenture certificates therefor, not to exceed the amount of accumulated capital, which certificates must specify the date, amount, rate of interest, and when the principal and interest are payable, and also the withdrawal value thereof at the end of each year.

"To borrow money not exceeding 25 per cent of its securities on deposit with the corporation commissioner for the purpose of making loans or paying withdrawals or maturities; or carrying on its business more conveniently or advantageously, or otherwise facilitating its objects and purposes, and therefor to give its promissory note or notes * * * to bear such rate of interest and to be due and payable at such time or times etc." Id., 25-302.

Under its by-laws it was authorized to issue two classes of stock, reserved fund stock, and general guaranteed maturity stock. Its maturity stock might be issued in different classes.

Class B, required definite continuous monthly payments of 40 cents on each share and guaranteed to mature in 162 months.

Class C, required definite continuous monthly payments of 70 cents on each share and guaranteed to mature in 108 months.

Class D, required definite continuous monthly payments of $1.00 on each share and guaranteed to mature in 82 months.

Class E, required payment in full in advance in such sum as the board of directors should deem the present value of each share, worth $100 at maturity.

Class F, savings stock, required to be paid at such time as the buyer might elect.

Class G, required full payment in advance at par and to receive cash dividends.

It appears from the complaint that on May 26, 1931, the Guardian had sold and had outstanding 500 shares of its reserve fund stock of the par value of $100 per share ($50,000); that on the said date, it had outstanding on the different classes of its general maturity stock, $1,133,162.64.

From time to time the Guardian invested its accumulated capital in various securities and by May 26, 1931, it had on deposit with an authorized depository securities to the extent of $507,000. At the same date, it had outstanding close to $500,000 of its ten years debentures.

The West Coast Life Insurance Co. is a duly authorized corporation, and hereinafter referred to as the West Coast.

The Mortgage Investment Co., a duly organized Oregon corporation and hereinafter referred to as the Investment Co., was occupying a position toward the Guardian as a sort of holding company, holding its reserve fund stocks. It entered into a ten-year contract with the Guardian, approved by the corporation commissioner, whereby it was to pay the operating expenses of the Guardian for the compensation of 2½ per cent of the Guardian assets per year, the maximum amount the Guardian was permitted to spend for that

purpose: Id., 25-309. It appears to have expended much greater sums than it was entitled to receive under its contract and was paid in debentures, which it negotiated for value to the parties herein now holding the same, and who, according to the stipulation herein, except the Leasehold Co., took the same without knowledge or notice of any defect in the title of the Investment Co., except such as the law might imply. The amount of the debentures received by the Investment Co. from the Guardian was far in excess of the amount due it under its expense contract.

The Commonwealth Title and Trust Co. is an Oregon corporation and will be hereinafter referred to as the Commonwealth.

On April 23, 1929, the Guardian received from the West Coast, $20,000 and issued therefor $20,000 of its debentures. These debentures are unpaid and the West Coast claims preference and interest to date of payment.

On March 31, 1931, the Guardian received from Frank J. Scholl, $2,000 and issued debentures to him in that amount. These debentures are unpaid and the holder claims preference and interest to date of payment.

The defendant, Leasehold Corporation, is a duly organized Oregon corporation. It seems to have been organized for the purpose of holding a lease on certain real property in the city of Portland. It received $21,000 of Guardian debentures from the Investment Co., and deposited them with other securities with the Commonwealth as security for a 99-year lease on the said property. The Leasehold Co. defaulted on its payments, and the lessor, under the terms of the lease, declared a forfeiture of the securities. The lessee thereupon employed an attorney, John W. Kaste, to re-

cover the securities thus declared forfeited, under an agreement that his compensation should be one-third of the amount recovered. Thereupon, attorney Kaste effected a compromise by which the lessor returned the $21,000 of debentures which he now holds. He claims said debentures belong to the Leasehold Co. and that he has a lien upon them for $7,000—and also claims preference in payment and interest to date of payment.

On December 20, 1929, the West Coast received for value, from the Investment Co., $40,000 of Guardian debentures, on which it claims preference and interest to date of payment.

On September 15, 1930, the Investment Co. borrowed from the Bank of California National Association, a duly organized National bank under Federal statutes, certain moneys and gave its promissory note therefor. It also deposited with said bank, as collateral security, $15,000 of Guardian debentures. There is still due on said note $2,314.67 and the said bank claims a right to collect on its collateral with a preference payment to the extent of the amount due on said note with interest thereon to date of payment.

On November 10, 1930, the Investment Co. negotiated $20,000 of Guardian debentures to R. E. Chadwick for certain reserve fund stock of the Western Savings and Loan Association. R. E. Chadwick is now the owner of said debentures and claims preference for the same and interest to date of payment.

On November 16, 1930, the Investment Co. negotiated to R. E. Chadwick $10,000 of Guardian debentures for certain reserve fund stock of the Western Savings and Loan Association. Thereafter, R. E. Chadwick duly assigned and transferred, for value, said debentures to the United States Fidelity and

Guaranty Company, which is now the holder and owner thereof and claims preference of payment of said debentures and interest thereon to the date of payment.

On June 26, 1931, the Investment Co. sold to R. E. Chadwick $11,000 of Guardian debentures. Thereafter, R. E. Chadwick, for value, duly assigned and transferred said $11,000 of debentures to J. G. Arnold who is now the owner and holder thereof and claims a preference in payment of the same with interest to the date of payment.

On May 25, 1931, the corporation commissioner of the state of Oregon, believing the affairs of the Guardian to be in an unsound condition, took possession of all its assets and notified its directors to restore it to a sound condition within twenty days. The directors having failed to establish the Guardian to a sound business basis, as requested, proceedings were thereupon taken by the Attorney General and the corporation commissioner to liquidate it in accordance with the law: Oregon Code 1930, section 25-314.

The Guardian, the Investment. Co., and the Leasehold Co. were controlled by and the business of each carried on by the same executive officers.

The Investment Co. was forced into bankruptcy in which proceedings the corporation commissioner intervened, as statutory liquidator of the Guardian, alleging that the Guardian was a creditor of the bankrupt for and to the full extent of the debentures at issue in the instant case.

The corporation commissioner, in the process of liquidation, being confronted by many conflicting claims to the assets of the Guardian, brought this suit in the circuit court to procure a declaratory judgment fixing the status of the several adverse claims.

Defendants Alfred Wallin, John Nylund and Lena Nylund, intervened for themselves and all others similarly situated. The intervenors are holders of Class E and Class G shares (fully paid up shares of Guardian general guaranteed maturity stock).

Upon hearing, the circuit court entered a judgment declaring the debentures general obligations of the Guardian having priority over the sums due the shareholders; that the debentures issued to the Leasehold Co. and now held by John W. Kaste were issued without consideration and are void, but that the lien held by the present holder is a valid claim against the Guardian; that interest on all debentures should cease June 24, 1931, the date the corporation commissioner took over the assets for the purpose of liquidating.

The plaintiff, defendant Leasehold Co. and Intervenors appeal.

It is stipulated between the plaintiff and defendants West Coast Life Insurance Co., The Bank of California, R. E. Chadwick, United States Fidelity and Guaranty Co., J. E. Arnold and the Leasehold Co., that, with the exception of the Leasehold Co., the stipulating defendants had no notice or knowledge of any defect in the issuance or transfer of the debentures now held by the several parties except such as the law might imply.

The pleadings herein present for our consideration the following questions:

1. Did the directors of the Guardian have authority to issue the debentures?

2. Are these debentures negotiable instruments under the Negotiable Instrument Law?

3. If these debentures are negotiable instruments, are the present owners holders in due course?

4. What are the priorities, if any, of the outstanding obligations of the Guardian?

1. On December 10, 1930, the board of directors of the Guardian adopted the following resolution:

"RESOLVED, that the Guardian Building and Loan Association petition the State for permission to sell additional debentures in amount of $400,000.00, said debentures to be described as 6% Debentures Certificates; that said debentures be sold for cash and that no commission be paid for the sale of said debentures. That the President and Secretary take all steps necessary and proper to secure said permit from the Corporation Department of the State of Oregon."

 Pursuant to this resolution, and an application made thereunder, the corporation commissioner, on December 24, 1931, issued a permit to sell the debentures in question herein. This resolution and permit and the fact that the accumulated capital of the Guardian was, at that time, far in excess of the debentures authorized, was sufficient authority for the executive officers of the Guardian to issue the debentures in question, under the first clause of section 25-302 above quoted.

"The actual accumulated capital at any time shall be deemed to be the authorized capital at such time * * * ." Id., 25-302.

The following is a copy of debentures issued with the exception that the ones issued had the blanks filled in:

"State of Oregon
GUARDIAN
BUILDING & LOAN
ASSOCIATION ·
Incorporated Under the Laws of the State of Oregon
TEN YEAR DEBENTURE
THE GUARDIAN BUILDING AND LOAN ASSOCIATION, a corporation organized and existing under

the laws of Oregon, hereinafter called the Association, for value received, hereby acknowledges itself indebted to the bearer or registered owner hereof in the sum of

## ONE THOUSAND DOLLARS

in gold coin of the United States of America of the present standard of weight and fineness which sum it promises to pay in such gold coin to the bearer or registered owner hereof on the first day of January —— at its offices in the City of Portland, Oregon, or one year from date hereof providing notice is given in accordance with the terms hereof with interest thereon at a rate of six per cent (6%) per annum. Payable semi-annually on the first day of July and January each year until the principal has been paid by demand of bearer or registered owner or call of the Association, such interest to be paid only by surrender to the Association at its offices or duly authorized agency the coupons hereto annexed as the same respectively mature. Interest coupons not surrendered as and when due shall not bear interest after due date of presentation.

The Association agrees to pay this debenture if presented for payment one year from date of issuance or at any interest paying period thereafter by giving to the Association written notice sixty (60) days prior to such interest period. This debenture shall pass by delivery unless registered in the owner's name on the books of the Association at the office of the Association in the City Of Portland, Oregon. Such registration being noted on the debenture in the space provided for such registration by the secretary of the Association. It may be discharged from registry by being transferred to bearer and registration cancelled by the secretary of the Association.

This debenture is one of an issue of —— authorized by the Board of Directors of the Guardian Building and Loan Association of Portland, Oregon and is a general obligation of the Association. At the time of issuance, there was on deposit a net sum of —— in first mortgages with the Title and Trust Company of Portland,

Oregon, accumulated by Capital of the Association. Proceeds of this debenture and of the issue will be invested in securities in accordance with the laws of the State of Oregon governing Building and Loan Associations and said securities will be deposited with said Title and Trust Company.

The Association reserves the right to call for redemption and payment this debenture or any or all other of the issue at any interest paying period at one thousand and ten dollars ($1010.00) for each one thousand dollar debenture ($1000.00). Notice of redemption call shall be made by giving written notice sixty (60) days prior to date determined for surrender to registered owners to their respective addresses as shown on the Association Register or by advertising for three successive issues in a newspaper of general circulation in the City of Portland at least sixty (60) days prior to surrender date.

Issued————————————————————

Countersigned: GUARDIAN BUILDING & LOAN ASSOCIATION

| | |
|---|---|
| Secretary of the Association | President of the Association'' |

The certificates issued comply with law as to date of issuance, amount, rate of interest, withdrawal value at the end of each year: Id., 25-302.

The issuing of debenture certificates does not come under the head of borrowing, anymore than selling shares to members is borrowing money. The ordinary bank is not borrowing money of its depositors. It appears from the language of the statute that there is a clear distinction made between receiving money for which debenture certificates are issued and borrowing money on promissory notes. Borrowing money for facilitating its business may be done on promissory

notes and is only permitted to the extent of 25 per cent of the securities on deposit with the corporation commissioner.

■ 2. Plaintiff and intervenors contend that these debentures are non-negotiable under the Negotiable Instrument Law. This contention is based on the following clause in the debenture:

"Proceeds of the debenture and of the issue will be invested in securities in accordance with the laws of the State of Oregon, and said securities will be deposited with said Title and Trust Company."

This is nothing more than surplusage. It is simply writing the law relating to investments of building and loan associations into the debenture certificates with the exception that it names the bank or trust company. This clause does not render the debentures non-negotiable. The law provides for the safe keeping of securities held by a building and loan association: Oregon Code 1930, section 25-313.

The statute defines the requirements of a negotiable instrument. The debenture issued by the Guardian, (1) is in writing signed by the drawer, (2) it contains an unconditional promise to pay a sum certain in money, (3) it is payable at a fixed time, (4) it is payable to bearer: Oregon Code 1930, section 57-101. The debenture itself expresses that it is payable to bearer: Id., section 57-101. "Bearer means the person in possession of a bill or note which is payable to bearer": Id., section 57-1101. *American National Bank v. Kerley*, 109 Or. 155 (220 P. 116, 32 A. L. R. 262).

The claim that these debentures are non-negotiable, is untenable.

■ 3. The investing public knowing that the Guardian was duly authorized by law to issue debenture certificates and being offered such debentures, properly executed by the authorized officers under the seal

of the issuing corporation, being "without notice or knowledge of any defect in the title," had a right to rely on such insignia of regularity. It was not incumbent upon the purchasers of such certificates to make inquiry regarding the amount the Guardian received for the instrument in the first instance, nor were they under obligation to see that the sum they paid reached the coffers of the Guardian. The statute defines a holder in due course: Oregon Code 1930, sections 57-402, 57-406.

"The strictness of the general equity doctrine of constructive notice is not applied to a purchaser for value of negotiable instruments before maturity. Such purchaser is not 'put on inquiry' by suspicion, by knowledge of such facts as ought to put an ordinarily prudent man upon inquiry, nor by negligence. He is not required to busy himself inquiring about infirmities or searching for defects. Only knowledge of such facts as would make his purchase an act of bad faith is sufficient to impeach his title as a holder in due course. * * * The question is one of good faith or bad faith, honesty or dishonesty." Bank of California vs. Portland H. and W. Co., 131 Or. 123 (282 P. 99); Holt v. Guaranty & Loan Co., 136 Or. 272 (296 P. 852).

It is contended by the intervenors that the operation of a building and loan association is analogous to that of a municipal corporation and that the same rules of law should apply respecting the issuance of bonds or other evidences of indebtedness. A municipal corporation is exercising certain delegated public functions. Its books and records are open to the public at all times. The law makes no such provision for public inspection of the records of a building and loan association.

The defendants, West Coast, Bank of California National Association, United States Fidelity and Guaranty Company, R. E. Chadwick, J. E. Arnold and Frank J. Scholl, having purchased before maturity and

for value their respective debentures, are holders in due course.

■ There can be no doubt but that there was no consideration given to the Guardian for the $21,000 of debentures claimed by the Leasehold Co. and now in the hands of its attorney, and on which he claims a lien. Nor is there any possibility that the Leasehold Co. did not know that fact at the time it received them. They were, therefore, never the property of the Leasehold Co. The attorney is in no better position than his employer.

"An attorney has a lien for his compensation * * * as provided in this section,—

1. Upon the papers of his client which have come into his possession in the course of his professional employment;

2. Upon money in his hands belonging to his client.

* * * * *

This lien is, however, subordinate to the rights existing between the parties to the action, suit, or proceeding." Oregon Code, section 32-303.

Any lien claimed by the attorney of the Leasehold Co. must arise under either subdivision 1 or 2 of the above section. It cannot arise under subdivision 1 because the papers on which he claims a lien do not belong to his client. If we treat the debentures as money under subdivision 2, he is still no better off because even if it were money it does not belong to his client. Admitting for the sake of the argument only that these debentures were at one time in the ownership of his client so as to enable a lien in his favor to attach, yet the court having decided that the debentures belonged to the Guardian, his lien would be subordinate to the rights of plaintiff. The attorney may have rendered services which are of value to the Guardian, and if so he should receive reasonable compensation from the statutory liquidator for such services, but it is not

within the power of the Leasehold Co. to fix the amount of such remuneration. It is also claimed that because the plaintiff made the allegation in his intervening petition in bankruptcy proceedings of the Investment Co. claiming that the Guardian was a creditor of the bankrupt to the full extent of the outstanding debentures, including those claimed by the Leasehold Co., and the bankruptcy court found that such allegaton was a provable claim, then such finding is an adjudication of the matter and plaintiff is estopped from now asserting that the Guardian is the owner of these debentures. If the plaintiff could show in the bankruptcy proceedings that the Investment Co. was indebted to the Guardian for any part of the outstanding debentures, he had a right to intervene. The only adjudication had in such proceedings so far as they affect the matters herein is that the Investment Co. was declared a bankrupt and that the Guardian had a provable claim against it. Such an initial allegation made in the bankrupt court is analogous to a complaint, which states a good cause of action in a state court. It gives the party making the allegation a standing in court, although on final hearing he may be unable to sustain it by competent evidence.

"The distinction between 'proved' and 'allowed' is always made apparent throughout the Bankruptcy Act, and the term 'provable claims' * * * is not to be given the same meaning as allowable claims." In re Hornstein, 122 F. 266 (10 A. B. R. 308); Collier on Bankruptcy (13th Ed.), 1122, 1374.

4. It is contended that because the intervening shareholders paid for their shares of stock in full at the time of purchase they should be on the same footing with the debenture holders and especially those shares purchased while the law of 1927, chapter 186, section 10, p. 217, "The relation between a building

and loan association and its members, other than the holders of reserve fund stock, shall be that of contract, creating the status of debtor and creditor," was in force. This law was repealed by the 1929 Session Laws, chapter 189, p. 192.

██ It is doubtful if the 1927 law added anything to the law as it has stood since 1915. "All the moneys received by any Association organized under and governed by this Act shall be considered deposits": Laws of 1915, chapter 227, section 14, p. 324. Depositing money in a bank or similar institution usually creates the relation of debtor and creditor between the institution and depositor. The buyer of a share in a building and loan association not only becomes a depositor but also a constituent part of the institution with a right to participate in its control and the direction of its activities and to share in its profits and losses. He stands in a different relation to the association than that of a general creditor. We can see no difference in the situation of those who had paid for their stock in full and those who had only partially paid for their stock but were in good standing at the time the Guardian was taken over by the liquidator, as to the amount actually paid: *Western Bond and Mortgage Co. vs. Crews,* 112 Or. 663 (231 P. 138). The clause of section 25-302 supra, permitting a building and loan association to receive cash for its debenture certificates up to the amount of its accumulated capital, must imply that the debenture holders would have prior right over the stockholders, otherwise limiting the extent of the issue of debentures would be meaningless. It places the debenture holders in the same relative position towards the stockholders of a building and loan association, in the event of liquidation, as creditors and stockholders of an ordinary corporation. It cannot be the intention of the law, that a corporation may receive

money and issue its solemn obligation to repay it, and that if the business of the corporation prove unsuccessful, or the officers elected by the stockholders prove inefficient or dishonest and thus ruin the business, that the stockholders shall be on the same footing relative to the distribution of the assets of the corporation as the man who advanced his money on the faith of the corporation's accumulated capital and its solemn promise to repay, but who had no voice in the selection of its officers or the management of the business, notwithstanding the fact that if the business proved profitable the stockholders would have shared in the profits. It was the corporation, of which the stockholder is a constituent part, that made the promise. A shareholder or stockholder becomes a creditor of the corporation upon its liquidation and is entitled to a distributive share of the assets but such right of distribution is inferior to the general creditor. In a building and loan association upon its liquidation, the reserve fund stock has the last call on its assets: Oregon Code 1930, section 25-312. The debenture states, that at the time of its issue the association had on deposit with the Title and Trust Co. of Portland a certain net sum in securities. The association does not pledge these securities in payment of the debentures. The reference to the deposited securities is analogous to the property statement, which an ordinary bank requires of its applicants for loans, especially during these days of "frozen assets." The debentures create a charge against the Guardian having priority over the stockholders. They do not appear to be secured to any further extent, and bear interest only up to the day the corporation commissioner took the Guardian over for the purpose of liquidation, June 24, 1931. Should there be a surplus of assets after paying the debentures, and guaranteed maturity stock with inter-

est to that date, then the debenture holders and guaranteed maturity stockholders would be on a parity in regard to such surplus.

We hold that the Guardian and its executive officers had lawful authority to issue the debentures under consideration; that the debentures so issued were negotiable instruments under the Negotiable Instrument Law; that the West Coast Life Insurance Company, The Bank of California National Association, R. E. Chadwick, United States Fidelity and Guaranty Company, J. G. Arnold, and Frank G. Scholl are holders for value in due course; that the Leasehold Company is not a holder in due course or for value, and that its attorney, John W. Kaste, has no lien on the debentures claimed by it, and said Leasehold Company and its attorney should surrender to the Statutory Liquidator the $21,000 of debentures now, or at any time since June 24, 1931, held by either of them; that the intervenors and all other holders of Guardian general guaranteed maturity stock of whatever class, that were in good standing on June 24, 1931, are on a parity with each other in regard to their claim against the assets of Guardian, to the extent of the amount of money actually paid on such shares; that debenture holders have a prior preference over the holders of guaranteed maturity stock; that the latter have a prior preference over the holders of reserve fund stock; that interest on all debentures and shares of stock should cease on June 24, 1931, the day the corporation commissioner took over the Guardian for the purpose of liquidation.

The judgment of the circuit court should be modified and the cause remanded with instructions to vacate the present declaratory judgment and enter one in conformity with this opinion. None of the parties to recover costs or disbursements in this court.

It is so ordered.